In Re THEODORE BRADFORD LEETE and HELEN AMES LEETE, Minors, THEODORE C. LEETE, Petitioner.

St. Louis Court of Appeals. Opinion Filed July 3, 1920.   Separate Opinion Filed July 15, 1920.

1. HABEAS CORPUS: Custody of Children: Divorce Decree: Foreign Judgment Awarding Custody of Children: Effect. It is a general

205 App.—15

rule that if a judgment or decree touching the custody of the children is rendered by a court of competent jurisdiction in one State, such court being possessed of jurisdiction of both the subject-matter and the parties, such judgment or decree is *res adjudicata* as to all matters occurring up to the date of the rendition thereof, and is entitled to full faith and credit in any other State of the Union, unless it be subject to impeachment for fraud in the procuring thereof, and *held* that under section 1 of article 4 of the Constitution of the United States full faith and credit must be given to the original decree of the superior court of the commonwealth of Massachusetts, not only as a decree of divorce dissolving the bonds of matrimony previously existing between petitioner and respondent, but as an adjudication concerning the custody of the children and the fitness of each parent thereof, in respect to all matters pertaining thereto up to the time of the rendition of said decree.

2. ———: ———: ———: ———: **May Be Modified.** The courts of Missouri are not precluded from making an award of custody inconsistent with a foreign decree, based upon matters arising subsequent thereto, if the best interests and welfare of the children, which is the paramount consideration, should warrant such course.

3. ———: ———: ———: ———: **Remarriage in Violation of Law: Effect.** Even though petitioner removed from the State of Massachusetts to the State of Connecticut soon after the original divorce decree, and remarried, in violation of section 21 of chapter 152, Revised Laws of Massachusetts (1902), within less than two years after respondent, their mother, secured a divorce in Massachusetts, yet, as petitioner's marriage in Connecticut did not subject him to prosecution in Massachusetts under this statute, and the record of the proceedings in the superior court of the commonwealth of Massachusetts shows that in making application for the modification of the original decree respondent set up the facts concerning petitioner's removal to Connecticut, his remarriage there, and the other matters occurring subsequent to. the entry of the original decree, here set up by respondent, and the record shows that petitioner was interrogated concerning the same, and evidence touching these matters was before the court in that proceeding, but nevertheless the court refused to modify the decree so as to give respondent the sole and exclusive custody of said children, modifying it only as to the place where the children were to be delivered to petitioner, and the evidence touching this matter does not show that anything has occurred since the modification of the decree, making it appear that it would no longer be to the best interests of the children that

they be placed in the custody of their father for the alternate periods as provided by the original and modified decree, such decree will not be modified.

4. ——: ——: ——: ——: Absent Changed Conditions, Foreign Judgment Awarding Custody of Children Followed. In a *habeas corpus* proceeding by the father to obtain the custody of his minor children for the periods fixed by the decree of a Massachusetts court dissolving the bonds of matrimony previously existing between petitioner and respondent and awarding the custody of the children, *held* that although the record shows that respondent is a fit person to have the custody of the children, yet, the decree of the commonwealth of Massachusetts is entitled to full faith and credit in this jurisdiction, and that the evidence discloses no changed circumstances or conditions as to warrant the court of appeals in declining to grant the relief sought by petitioner.

BECKER, J., dissented in part, holding that the welfare of the children would best be conserved by giving their custody to the mother, with the right to the father, at his option, to have their custody each year during the school vacation period.

### Habeas Corpus.

WRIT AWARDED.

*Abbott, Edwards & Luedde* for petitioner.

(1) Full faith and credence should be given to the decree of the Massachusetts court, entered December 12, 1919. 9 R. C. L. Divorce and Separation, sec. 293, page 477; 19 C. J. Divorce, page 366; 2 Bishop on Marriage, Divorce and Separation, sec. 1189, page 463; Wilson v. Elliott, 96 Tex., 472, 97 Am. St. Rep. 928; Milner v. Gatlin, 139 Ga. 109; Hardin v. Hardin, 168 Ind. 352; Milner v. Gatlin, 143 Ga. 816; State ex rel. Nipp v. Dist. Ct. of Fergus Co. et al., 46 Mont. 425, Ann. Cases, 1916 B. 256; Anderson v. Anderson, 74 W. Va., 124; Wakefield v. Ives, 35 Iowa, 238; Note L. R. A., 1915B, 154. (2) So far as Mrs. Leete is concerned, there has been a change in the environment of the children from that reasonably anticipated by the Massachusetts Court. The association of Mr. Spaulding with Mrs. Leete and his character are not such as to contribute to the development of the moral fibre of the children. (3) Under the decree of the court, these children must be returned

by Mr. Leete to Mrs. Leete on September first, 1920. An award of the children to him now, would be tantamount to giving them to him for the summer vacation. She has had them for practically nine months of his year. Surely the maintenance of devotion between father and children is worth while for all concerned.

*Bishop & Claiborne* for respondent.

This is an original proceeding in *habeas corpus,* whereby the petitioner, Theodore C. Leete, seeks to obtain the custody of his two minor children, Theodore Bradford Leete and Helen Ames Leete. The respondent is George Olive Ames Leete, the mother of said children.

The petition for the writ alleges that on August 15, 1910, the petitioner was lawfully married to the respondent, and that petitioner and respondent resided as husband and wife at Longmeadow, in the County of Hampden, Commonwealth of Massachusetts; that there were born of said marriage, in Massachusetts, two children, namely, Theodore Bradford Leete, born September 18, 1911, and Helen Ames Leete, born March 3, 1913; that on or about June 26, 1918, petitioner and respondent separated in Massachusetts, and on November 19, 1918, by a decree of the Superior Court of the Commonwealth of Massachusetts, in and for the County of Hampden, a court of general jurisdiction having jurisdiction of the parties and of the subject-matter of said proceeding, in a libel brought by this respondent against this petitioner, a decree of absolute divorce was granted to the former, which decree became absolute on May 19, 1919; that on said November 19, 1918, it was by said court ordered, adjudged and decreed that this respondent have the custody and control of said children from September 1, 1918, until September 1, 1919, and that thereafter, subject to the further order of said court, she and this petitioner have alternately the custody and control of said children during the successive years thereafter, beginning September 1, 1918, and continuing during the minority of each of said children. . .

The petition further alleges that on August 28, 1919, respondent filed a petition in said Superior Court of the Commonwealth of Massachusetts, in said County of Hampden, in the aforesaid proceeding, praying the court to so far alter its said decree as to give the custody of said children to this respondent during their minority, setting up that this petitioner had remarried and that he then resided in the State of Connecticut. And the petition before us avers that on December 12, 1919, a final decree was entered by said court whereby the decree theretofore entered, to-wit, on November 19, 1918, was modified in this, that it was decreed that the said children should be forthwith delivered over by the respondent to this petitioner at the Hotel Kimball in the City of Springfield, Massachusetts, to be retained by this petitioner until September 1, 1920, whereupon they were to be by petitioner given over, at said Hotel Kimball, to respondent, to be retained by her until September 1, 1921, then to be returned by her to petitioner, "and so on alternately in alternate years until said children should become of age."

The petition further alleges that petitioner has in all respects complied with the original decree of said court, and the said modification thereof; but that the respondent, the mother of said children, has refused to carry out the terms of said decree, as modified, and refused to deliver the children to the petitioner at said Hotel Kimball in Springfield, Massachusetts, or elsewhere, but has retained them and has brought them from the Commonwealth of Massachusetts to the State of Missouri where she is now residing, and where she has the custody of said children.

The petition further alleges that, disregarding the decrees, aforesaid, respondent, without petitioner's knowledge or consent, removed the children from Massachusetts to the City of New York, and then took them to Chicago, Illinois, in an automobile occupied, driven and controlled by a married man named Howard E. Spaulding; that said Spaulding is and was at the time separat-

ed from his wife and involved in marital difficulties, was a man of about the same age as respondent; and "with whom she had theretofore been wrongfully keeping company;" that at Chicago, Illinois, the children were kept in the custody and control of respondent and said Spaulding at the Morrison Hotel, where they remained "at least ten days, including Christmas of 1918;" that thereafter said Spaulding, respondent and the children came to St. Louis, where they resided at the Hamilton Hotel in said city from about January 1, 1919, until April, 1919, during which time the children were kept in the company of said Spaulding and respondent, and where he and respondent associated together in the presence of and with the knowledge of the children, as well as when the latter were not present; that about April 1, 1919, Spaulding rented a dwelling house in University City, St. Louis County, paying the rent and expenses thereof, and that he, respondent and the children lived there until about September 5, 1919, during which time he was constantly associated with respondent, and he and respondent had the children in their company, not only at said house "but frequently driving and on other occasions;" that about the date last mentioned Spaulding and respondent left said dwelling "and installed themselves and the children at the Buckingham Annex in St. Louis, Mo.," where they have since resided; that if said Spaulding and respondent do not occupy the same rooms they occupy adjoining rooms, and they and the children are in constant association; that the wife of Spaulding resides in the City of St. Louis, and that he and his wife "have now a divorce suit pending in the circuit court of the city of St. Louis, and that one of the camplaints therein is the improper relations that have existed and are existing between respondent and said Spaulding, "which atmosphere the aforesaid children have been forced to breathe since the automobile tour inaugurated in New York, and in which improper and unfit atmosphere these children are reared;" that respondent and these children are being in large part, at least, supported and maintained by said Spaulding; that respondent declines

to permit the children to communicate with the petitioner, has never revealed to petitioner the whereabouts of herself and children, and has at all times disregarded the aforesaid decrees and has prevented the children from seeing and visiting petitioner; that respondent is unfit to have the care, custody and control of the children; that the present environment in which the children are living is detrimental to their proper education, general welfare and moral uplifting; and that the petitioner is able to provide and will provide a good home for them.

And it is alleged that the children are now in the custody of respondent at said Buckingham Annex, in the city of St. Louis; and that said Spaulding is treated by respondent as though he were the father of said children; and that "all of the aforesaid tends to alienate the affections of said children from petitioner."

Following a formal allegation to the effect that no application for the relief herein set forth has been made to or refused by any superior court or officer, the petitioner prays that the writ be issued to respondent directing her to produce said children before this court, and that the court award the custody thereof to petitioner, in accordance with the terms of the said decree of the Superior Court of the Commonwealth of Massachusetts of November 19, 1918, and the modification thereof, of date December 12, 1919.

Upon the filing of this petition, our writ of habeas corpus issued, and in due course the respondent filed her return. The return does not controvert the facts alleged in the petition regarding the divorce proceeding, the decree alleged to have been entered therein, and the subsequent modification thereof. Likewise there are other allegations of the petition not controverted by the return. The return avers that both of said children have been since their birth in the custody and under the control of the respondent; "that for a long time past the said Theodore Bradford Leete suffered from infantile paralysis, but under the watchful eye of his mother has constantly improved until to-day he appears to be nearly

cured; that as a result of this sickness said child has developed a fretful disposition and requires affectionate handling in order to develop and bring out the best that is in him;" that respondent has always entertained for her said children the greatest love, affection and consideration, and has in return been loved, respected and obeyed by them; and that at no time has she encouraged them to dislike, hate or show disrespect for their father, the petitioner; but that petitioner has at no time treated the children with great consideration and affection.

The return further sets up that the respondent is maintaining the children in comfortable quarters in the Buckingham Annex in the City of St. Louis, and is able to continue so caring for them; that they attend school daily, and Sunday School regularly, and have been properly clothed; that they are kept in good company, and that respondent, their mother, bears a good reputation for truthfulness, honesty and morality, not only among the people with whom she associates in the City of St. Louis, but likewise among the people with whom she associated in Longmeadow, Massachusetts. And it is alleged that at no time since the granting of the divorce has the petitioner ever appeared in the City of St. Louis to visit the children, or has he contributed anything to their support and education, or given them any gifts or remembrances; and that this proceeding is not taken by the petitioner for the purpose of giving him the care and custody of the children, but of giving petitioner's mother the care and custody thereof.

The return further alleges that since the granting of the divorce decree in Massachusetts the petitioner, Theodore C. Leete, has married and changed his residence to the City of Waterbury, State of Connecticut, and that he is engaged as a traveling salesman; that in contracting said marriage petitioner violated the laws of the State of Massachusetts, in such cases made and provided, "and that he is now a fugitive from the State of Massachusetts and cannot reside therein without first standing trial for said offense;" that if these children were surrendered by respondent to the petitioner, "they

would either be turned over to their grandmother, who resides in the State of Massachusetts, or would be taken by their father and turned over to his wife, their step-mother, and kept in the State of Connecticut. And the return concludes with the averment by respondent that it is to the best interest of said children that they continue to remain in her care and custody and under her control; and that to remove them from her would work irreparable injury to the children.

Petitioner's reply to the return contains a general denial, together with the following: "Further replying petitioner states that so much of the return as recites the remarriage of petitioner and alleged consequent results and residence in Connecticut, relates to matters which have been fully adjudged by the Superior Court of the Commonwealth of Massachusetts for the County of Hampden.".

The evidence taken before us establishes the facts regarding the marriage of petitioner and respondent, the divorce proceeding in Massachusetts, the decree of divorce rendered on November 19, 1918, by the Superior Court of the Commonwealth of Massachusetts, in and for the County of Hampden, and the subsequent modification thereof of date December 12, 1919, as alleged in the petition for the writ. The authenticated copies of the records of these proceedings, introduced in evidence, show that by the original decree respondent, George Olive Ames Leete, was awarded the custody and control of these children from the date of said decree, to-wit, November 19, 1918, until September 1, 1919, at which time the custody thereof was to be delivered to petitioner. Respondent retained the custody of the children under this decree, and did not surrender them to petitioner, their father, on September 1, 1919, as required by the decree; respondent having in the meantime removed from Massachusetts. The evidence shows that on August 28, 1919, respondent, being then in this State, filed in the Superior Court of the Commonwealth of Massachusetts for the County of Hampden a petition, setting up the facts regarding the divorce proceeding and said

decree, and alleging that said children had always been with her, were much attached to her, and that she desired them to continue with her during their minority; that when said decree of November 19, 1918, was entered, the homestead of the family of this petitioner, Theodore C. Leete, in Longmeadow, Massachusetts, was a commodious and comfortable home, where his father and mother lived, and which was located in the neighborhood where the children had lived before their parents were divorced and where they were surrounded by friends and acquaintances; that since the date of the entry of said decree the father of this petitioner had died, the homestead had been sold, and this petitioner's mother had removed to smaller apartments, and petitioner had removed to Hartford, Connecticut, where he was then living with his second wife, whom he married June 5, 1919, at Waterbury in the State of Connecticut, seventeen days after the decree in said divorce proceeding became final. And this respondent, in her said petition, further alleged that since the entry of the final decree in said cause, this petitioner had become possessed of much property, to-wit, one-third of the estate of his deceased father, and that he was then a wealthy man; but that the property of this respondent, George Olive Ames Leete, was nearly exhausted, consisting of unimproved real estate in the town of Longmeadow, not worth more than $3000. The prayer of that petition was that the court so alter its decree as to give the custody of the two children to this respondent during their minority, with a further prayer for an order upon this petitioner to contribute a reasonable sum to their support and education.

It appears that though this respondent filed the aforesaid petition for modification of the divorce decree relative to the custody of the children, she did not appear in person at the time of the hearing thereon. However, with the aforesaid allegations in her petition for a modification of the decree, the Superior Court of the Commonwealth of Massachusetts in and for the County of Hampden, upon the appearance of this peti-

tioner by counsel, and after the taking of his deposition upon interrogatories propounded to him by this respondent or her counsel, entered an order, on December 12, 1919, modifying the aforesaid judgment. By the terms of the decree as thus modified this respondent, George Olive Ames Leete, was ordered and directed to forthwith give over to this petitioner, Theodore C. Leete, the two children, at the Hotel Kimball in the City of Springfield, Massachusetts; the parties to have alternate custody of said children in accordance with the original decree.

It appears that no appeal was prosecuted from the order or decree thus modifying the original decree, and that the same consequently became a final judgment of said court.

The evidence is that in November, 1918, after the entry of the original decree, respondent, with her two children, went to the City of New York where she was with her mother and her sister, and where she met Howard E. Spaulding, who represented a company having headquarters in Chicago. It is said that respondent first became acquainted with Spaulding about the time of the filing of her divorce suit, he being a friend of this petitioner. The parties were not permitted to go further into this matter, under our ruling confining the evidence to matters occurring subsequent to the original divorce decree. It appears that while respondent was in New York City, as stated above, she, her mother and sister, were invited by Spaulding to accompany him on a trip by automobile to Chicago; he having previously planned to go to Chicago in this manner, stopping en route at certain places to transact business for his company. And respondent, her mother and sister, and the children, accompanied Spaulding upon this trip. After remaining a short time in Chicago, respondent with her children, and her mother and sister, came to St. Louis, where they resided for a time at a hotel. Later Spaulding came to St. Louis, having been "transferred" to that place, it is said, by his company; and the evidence shows that he, respondent, and

respondent's mother lived for a time at the Hamilton Hotel in said city, later occupying the house in University City, mentioned in the petition, and still later taking quarters at the Buckingham Annex, where they resided at the time of the institution of this proceeding. The evidence is that at all times when respondent and Spaulding thus lodged or resided at the same hotel, respondent's mother was with her (and sometimes her sister) and Spaulding occupied a separate room. The house in University City, it is said, was rented by Spaulding, he occupying a room therein, and respondent, her children and her mother occupying other rooms; Spaulding paying the rent as his part of the total expense, and respondent and her mother defraying other expenses. At the Buckingham Annex Spaulding occupied a room adjoining that occupied by respondent's mother; and when he was absent from the City, as he was frequently, this room was used by the others as a sitting room.

The evidence shows that Spaulding was a married man living apart from his wife; and that in April, 1920, his wife was granted a decree of divorce against him, with alimony, by the Circuit Court of the City of St. Louis. And we are advised by respondent's counsel, in his brief, that since the taking of the testimony herein, and the submission of the case to us, respondent and the said Howard E. Spaulding have married.

Respondent is evidently a kind, devoted mother. It appears that she has some property of her own, and that her mother, Mrs. Ames, who is a woman of some wealth, has contributed in no small decree to the support and maintenance of the children, since the entry of the divorce in Massachusetts, and offers to do so in the future.

The evidence is that the second marriage of this petitioner, which took place in Connecticut, was within a year after the Massachusetts divorce decree of November 19, 1918; that petitioner now resides in Connecticut, where he has a good home; and that he has ample means with which to provide for the children.

He carries $10,000 insurance upon his life for the benefit of the children, for whom he appears to have great affection. It appears that his condition in life has in no wise changed since the modification of the divorce decree of December 12, 1919. In behalf of respondent there is evidence touching petitioner's failure to evince a desire to see the children, or to communicate with them, since they have been in this city. But petitioner's evidence shows that after the entry of the original divorce decree, he was in the military service of the United States for some months; that he telegraphed to respondent at Christmas, 1918, in an effort to make arrangements to see the children, without avail; and that in 1919 respondent wrote petitioner directing him not to correspond directly with her or the children, but to send all communications through her attorneys. However, it does not appear that respondent has ever sought to prejudice the children against their father.

## OPINION.

ALLEN, J. (after stating the facts as above).—At the outset we are confronted with the question as to the effect to be given to the decree of the Superior Court of Massachusetts, of November 19, 1918, as modified by the decree of that court of December 12, 1919. There is some conflict of authority in regard to the extraterritorial effect of a judgment or decree awarding the custody of children upon a divorce of their parents. However, the general rule, supported by the great weight of authority, appears clearly to be, that if a judgment or decree touching the custody of children is rendered by a court of competent jurisdiction in one state, such court being possessed of jurisdiction of both the subject-matter and the parties, such judgment or decree is *res adjudicata* as to all matters occurring up to the date of the rendition thereof, and is entitled to full faith and credit in any other state of the Union, unless it be subject to impeachment for fraud in the procuring thereof.

In 9 R. C. L. p. 477, Sec. 293, it is said:

"The authorities are in conflict on the question as to the extraterritorial effect of a judgment awarding the custody of children upon a divorce of the parents. Some cases hold·that while the judgment is res judicata in the state of its rendition, and elsewhere so far as the parents are concerned, it is not res judicata as to the right of some other state where the children may subsequently be, to determine the custody of the children as their welfare may require. Other authorities, on the other hand, sustain the proposition that where a decree of divorce fixing the custody of the children of the marriage is rendered in accordance with the laws of another state by a court of competent jurisdiction, such decree will be given full force and effect in other states so long as the circumstances attending the adoption of the decree remain the same. A majority of the cases seem to hold that in the absence of fraud, or want of jurisdiction affecting its validity, a judgment divorcing a husband and wife and awarding the custody of children of the marriage should be given full force and effect in other states, as to the right to the custody of the children at the time and under the circumstances of its rendition; although the decree has no controlling effect in another state as to facts and conditions arising subsequently to its rendition, and that courts of the latter state may, in proper proceedings, award the custody otherwise than in accordance with the original decree, upon proof of matters subsequent to the decree, which justify such inconsistent award in the interest of the welfare of the children. It is clear that whatever may be the rule adopted, a foreign decree or order is not a bar to a subsequent proceeding looking to its modification because of altered conditions since the time of its rendition, and where such altered conditions make a modification desirable and for the better welfare of the child."

We are of the opinion that under Section 1 of Article IV of the Constitution of the United States, full

faith and credit must be given to the original decree of the Superior Court of the Commonwealth of Massachusetts, not only as a decree of divorce dissolving the bonds of matrimony previously existing between petitioner and respondent, but as an adjudication concerning the custody of the children, and the fitness of each parent thereof, in respect to all matters pertaining thereto up to the time of the rendition of said decree. This view we find to be supported by the great weight of authority in this country. See Milner v. Gatlin, 139 Ga. 109, 143 Ga. 816; Wilson v. Elliott, 96 Tex. 472, 73 S. W. 946, 75 S. W. 368, 97 Am. St. Rep. 928; Hardin v. Hardin, 168 Ind. 352; Wakefield, v. Ives, 35 Iowa, 238: People ex rel. Allen v. Allen, 40 Hun 611, 105 N. Y. 628; State ex rel v. District Court et al. 46 Mont. 426, Ann. Cases 1916-B 256; State ex rel v. Giroux, 19 Mont. 149; Mylius v. Cargill (N. M.) 142 Pac. 918, L. R. A. 1915-B and note.

In note to Mylius v. Cargill, supra, L. R. A. 1915-B, p. 154, it is said by the annotator:

"While, as stated in the earlier note, there is some apparent conflict in the cases which pass upon the extraterritorial effect of a judgment awarding the custody of children upon a divorce of the parents, the better rule, and one supported by, or with which are reconcilable, a majority, at least, if not most, of the cases, seems to be that, in the absence of fraud or want of jurisdiction affecting its validity, a judgment divorcing a husband and wife and awarding the custody of children of the marriage should be given full force and effect in other states, as to the right to the custody of the children at the time and under the circumstances of its rendition, although, as held in Mylius v. Cargill, the decree has no controlling effect in another state as to facts and conditions arising subsequently to its rendition, and the courts of the latter state may, in proper proceedings, award the custody otherwise than in accordance with the original decree, upon proof of matters subsequent to the decree, which justify such incon-

sistent award in the interest of the welfare of the children, which should be the predominant consideration at all times and under all circumstances.''

The authorities there cited, and others to which we have referred above, abundantly support the annotator's conclusion. Indeed, as said in State ex rel v. Giroux, supra, ''this must be the result, otherwise the court of the state in which a controversy should arise subsequent to the date of the decree, would sit as a court of review of the action of a court of a sister state, having the same jurisdiction, thus according neither faith nor credit to its findings as to the fitness of the custodian selected by it.''

We are not, of course, precluded from making an award of custody inconsistent with a foreign decree, based upon matters arising subsequent thereto, if the best interests and welfare of the children, which is the paramount consideration, should warrant such course. Touching this matter, however, the evidence does not show that anything has occurred since the modification of the decree of the Superior Court of the Commonwealth of Massachusetts, of date December 12, 1919, whereby it has been made to appear that the petitioner had in any wise become an unfit or improper person to have the custody of his children; nor, indeed, do any facts appear, since said modification of date December 12, 1919, making it appear that it would no longer be to the best interests of the children that they be placed in the custody of their father for the alternate periods as provided by the original and the modified decree. It is true that this petitioner removed from the state of Massachusetts to the state of Connecticut, soon after the original divorce decree, and that on June 5, 1919, he remarried, in the state of Connecticut, within less than two years after the granting of the divorce; whereas Section 21 of Chapter 152, Rev. Stat. of Massachusetts (1902), introduced in evidence, provides that ''after a decree of divorce has become absolute   *   .*   * the party from whom the divorce was granted shall not

In re Leete.

marry within two years after the decree has become absolute.'' This provision is penal in its nature and has, we think, no extraterritorial effect. Under the decisions of the Courts of Massachusetts, it appears that petitioner's marriage in Connecticut did not subject him to prosecution in Massachusetts under this statute. (See Commonwealth v. Lane, 113 Mass. 458, 18 Am. Repts. 509; West Cambridge v. Lexington, 1 Pick. 506-510, 11 Am. Dec. 231.) But aside from this, the authenticated record of the proceedings in the Superior Court of the Commonwealth of Massachusetts, shows that in making application for the said modification of the original decree, this respondent set up the facts concerning petitioner's removal to Connecticut, his remarriage there, and the other matters occurring subsequent to the entry of the original decree, here set up by respondent, and the record shows that this petitioner was interrogated concerning the same, and evidence touching these matters was before the court in that proceeding; but nevertheless, the court refused to modify the decree so as to give this respondent the sole and exclusive custody of said children, modifying it only as to the place where the children were to be delivered to this petitioner, ordering that they be delivered to him ''forthwith.''

As to the fitness of respondent to have the care and custody of her said children, it is sufficient to say that in our judgment this record does not warrant us in holding that respondent is in any wise unfit to have such custody. On the contrary, though she may have acted unwisely in respect to the matter rehearsed here in the briefs, we are satisfied from all the testimony, including that of respondent, and her demeanor as a witness, that respondent, who appears to have always borne an excellent reputation, is a woman of good moral character, a kind and affectionate mother, having deeply at heart the welfare and proper rearing of these children. Our decision herein proceeds upon the ground that the decree of the Commonwealth of Massachusetts

in and for the County of Hampden is entitled to full faith and credit in this jurisdiction; and that the evidence discloses no such changed circumstances or conditions as to warrant us in declining to grant the relief sought by petitioner. The wisdom of that decree, providing that the custody be shifted from one parent to the other yearly, may well be doubted; but this is not a matter for our determination. Passing over the matters which were before the Superior Court of Massachusetts at the time of the entry of its decree of December 12, 1919, nothing, we think, appears in the evidence to afford any sound reason for denying to petitioner the relief sought. He, too, has great affection for his children, and it appears that they have been by no means estranged from him; and there is no ground to suspect that they will receive other than a father's loving care while in his custody.

It is therefore ordered and adjudged that the said minor children, Theodore Bradford Leete and Helen Ames Leete, be by respondent forthwith delivered over into the custody of the petitioner.

*Reynolds, P. J.,* concurs; *Becker, J.,* concurs in part and dissents in part in a separate opinion to be filed by him.

## SEPARATE OPINION.

BECKER, J.—I concur in so much of the opinion as sets out the law applicable to the case in hand, but in light of section 2510, Revised Statutes of Missouri, 1909, relating to the duty of courts in any proceeding in *habeas corpus* with reference to awarding custody of children, and the changed conditions shown by the record to have been brought about since the modification of the decree of December 12, 1919, I am of the opinion that the welfare of the children would best be conserved by giving their custody to the mother, with the right to the father, at his option, to have their custody each year during the school vacation period, approximately June 15th to August 31st.