[No. 3605.   Dec. 7, 1931.]

EVENS v. KELLER.

[6 P. (2d) 200.]

A. T. Hannett, of Albuquerque, and A. L. Zinn, of Gallup, for appellant.

H. C. Denny and H. S. Glascock, both of Gallup, for appellee.

OPINION OF THE COURT

SADLER, J.

This is a habeas corpus proceeding by appellant, hereinafter styled petitioner, instituted in the district court of McKinley county, N. M., against appellee, hereinafter styled respondent, to recover the custody of Alice L. Evens, a minor, who will be so designated hereinafter in this opinion. The minor, a little girl about ten years of age at the time of the trial, was born in Herculaneum, Mo. Her parents are both dead. Her father died at De Soto, Jefferson county, Mo., on December 30, 1926, and the mother died at the same place on March 13, 1928. Both parents were residents of De Soto, Mo., at the time of their deaths. They left surviving them Alice L. Evens, a minor daughter, then about eight years of age, and a minor son, then about eighteen years of age. The peti-

tioner is a brother of the minor's father and the respondent is a sister of the minor's mother.

Shortly following the death of the mother and on March 19, 1928, the petitioner was appointed guardian of the persons and estates of the minors aforesaid by order of the probate court of Jefferson county, state of Missouri. The respondent, then a resident of Sheridan, in the state of Colorado, went to Missouri to be with her sister, mother of the minor, during her last illness, arriving a short time prior to her sister's death. At that time, and following the death of the minor's mother, the respondent expressed a desire to adopt little Alice. In this she was opposed by the guardian. Thereafter she returned to her home in Colorado, and soon after her return began to negotiate with petitioner for permission to have the child pay her a short visit in that state. The petitioner consulted with the probate judge who had appointed him guardian in Missouri. He approved the visit provided petitioner should have respondent disclaim any purpose of attempting to retain custody of the child. In a letter of June 23, 1928, addressed to petitioner, the respondent wrote concerning the contemplated visit of the child. In this letter she expressly disclaimed any design or intent to adopt the child, and manifested unmistakably the purpose to return her to her guardian at the end of a three weeks' visit. On the faith of this letter, petitioner permitted the child to visit respondent in Colorado. Within three days after her arrival in Colorado, the respondent petitioned the probate court of Arapahoe county, Colo., for letters of guardianship of the person and estate of the minor, which were granted to her. Shortly following her appointment as guardian, and on August 20, 1928, she secured an order of adoption of said minor from the county court of Arapahoe county, Colo. All of this was done without advice or notice to petitioner. When information of what had been done reached him, it came from a source other than respondent.

On November 20, 1928, petitioner instituted against respondent habeas corpus proceedings in the district court of Arapahoe county, Colo., to recover the person of said

minor. The respondent appeared, and after full hearing, in which the court made its findings of fact and conclusions of law, said district court, on June 25, 1929, awarded the custody of said minor to the petitioner herein. Thereupon the respondent fled the jurisdiction of the Colorado courts, taking said minor with her to Gallup, McKinley county, N. M. In contempt proceedings against her in Colorado wherein service was had through her husband who remained behind, she was adjudged guilty of contempt, fined $500, and ordered committed to jail in Arapahoe county, Colo., until said fine was paid and the custody of the minor delivered into the hands of petitioner.

Following respondent's arrival at Gallup, McKinley county, N. M., one Sadie L. Johnson, her sister, made application for letters of guardianship of the person of said minor, and such letters were granted to her by the probate court of said county. Thereafter, and on August 12, 1929, the respondent herein made application to the district court of McKinley county, N. M., for adoption of the minor. Respondent's sister as New Mexico guardian consented thereto, and a decree adopting her unto the respondent was made by said district court on December 10, 1929.

It was not until some time in the month of October, 1929, following the flight of respondent with the child from Colorado, that petitioner learned of their whereabouts. On March 19, 1930, petitioner filed in the district court of McKinley county his petition for a writ of habeas corpus against respondent for the custody of said minor in which the history of the controversies between them over the custody of this child was pleaded substantially as hereinabove set forth. The petition set forth the appointment of petitioner as guardian in Missouri, and, in addition, pleaded a copy of the judgment of the district court of Arapahoe county, Colo., entered in the habeas corpus proceedings there, and relied upon the same as res adjudicata between the parties over the right to custody of the child. The respondent made return to the writ admitting custody of the minor and relying upon the decree of adoption rendered by the district court of

McKinley county as justification for such custody. She made separate answer to the petition admitting petitioner's residence in Missouri and her residence at Gallup, denying petitioner's appointment as guardian of the minor in Missouri, denying the allegations of the petitioner with reference to the habeas corpus proceedings in Colorado, and asserting affirmatively as a defense the rendition by the district court of McKinley county of the decree adopting said minor unto the respondent. The district court of McKinley county, after a full hearing, awarded the custody of the minor to the respondent. Its judgment embraced findings of fact and conclusions of law, and from such judgment the petitioner has prosecuted this appeal.

A question of practice should be first determined. It is insisted by the respondent that no right of appeal lies from an order of the district court dismissing a writ of habeas corpus. She cites several New Mexico cases in support of her contention, but each of them is a case where habeas corpus proceedings were instituted by individuals seeking freedom from an alleged unlawful detention by officers of the law. The petitioners, seeking to avail themselves of the writ, were prisoners in custody. There is a well-recognized distinction between that class of cases in which the judgment lacks the finality essential to review and cases where the remedy of habeas corpus is invoked to determine the custody of a child. In cases of the kind last mentioned, the action is in effect and in fact one between private litigants in which the public has no concern. The judgment rendered in such a case constitutes a final adjudication on the state of facts then existing. It is well established that an appeal lies from such a judgment. 29 C. J. 185; 12 R. C. L. 1257; Tillman v. Walters, 214 Ala. 71, 108 So. 62; Cormack v. Marshall, 211 Ill. 519, 71 N. E. 1077, 67 L. R. A. 787, 1 Ann. Cas. 256.

We have heretofore entertained appeals from orders dismissing the writ where it was invoked to settle and determine the right to the custody of minor children. Mylius v. Cargill, 19 N. M. 278, 142 P. 918, L. R. A.

1915B, 154, Ann. Cas. 1916B, 941; Focks v. Munger, 20 N. M. 335, 149 P. 300, L. R. A. 1915E, 1019. We therefore hold that the order made in this case was appealable.

■ ■ Turning then to the merits of the appeal, we find each party thereto relying upon the judgment of a particular court as decisive of his or her , claim to the custody of the child. Petitioner relies upon the judgment of the district court, of Arapahoe county, Colo., awarding him the child's custody in habeas corpus proceedings. Respondent points to the later decree of adoption rendered by the district court of McKinley county, N. M., following her flight into New Mexico with the child, and places reliance on it. It is manifest that no proper decision in this case is to be had without first determining the effect of these two decrees or judgments, and the extent to which the one operates against, neutralizes, or renders innocuous the other.

We think it may safely be stated to be the prevailing rule supported by the great weight of authority that the judgment of a court of competent jurisdiction in habeas corpus proceedings awarding the custody of a minor child constitutes a conclusive adjudication between the parties contesting for such custody on the state of facts then existing. And in a subsequent proceeding between the same parties involving the custody of such child the propriety of the judgment in the former action may not be inquired into or assailed, except upon some of the well-recognized grounds permitting collateral attack on judgments. Only a change in circumstances and conditions materially affecting the existing welfare of the minor, occurring since the former adjudication, may properly become the subject of inquiry and the basis of a change in the award of the minor's custody. 29 C. J. 112; 12 R. C. L. 1255; Freeman on Judgments (5th Ed.) § 829; Mercein v. People, 25 Wend. (N. Y.) 64, 99, 35 Am. Dec. 653; Ex parte Lee, 220 N. Y. 532, 116 N. E. 352; Wilkerson v. Galbreath, 107 Okl. 227, 232 P. 21; Wedderburn v. Wedderburn, 46 App. D. C. 149; Tebbetts v. Rickart, 252 Mo. 302, 158 S. W. 843; Knapp v. Tolan, 26 N. D. 23, 142

N. W. 915, 49 L. R. A. (N. S.) 83; Cormack v. Marshall, 211 Ill. 519, 71 N. E. 1077, 67 L. R. A. 787, 1 Ann. Cas. 256.

■ The application of the rule is not confined to domestic judgments, but, under the full faith and credit clause of the Federal Constitution, the judgment of a sister state in habeas corpus proceedings over the custody of a child will be given the same effect in another state, if the matter is there again sought to be litigated, as in the state of its rendition. Mylius v. Cargill, 19 N. M. 278, 142 P. 918, L. R. A. 1915B, 154, Ann. Cas. 1916B, 941; Spann v. Edwards, 139 Ga. 715, 77 S. E. 1128; McDowell v. Gould, 166 Ga. 670, 144 S. E. 206; In re Leete, 205 Mo. App. 225, 223 S. W. 962; In re Marshall, 100 Cal. App. 284, 279 P. 834; In re Wenman, 33 Cal. App. 592, 165 P. 1024; In re Standish (Standish v. Truitt), 233 N. Y. 689, 135 N. E. 972; Motichka v. Rollands, 144 Wash. 565, 258 P. 333; Heavrin v. Spicer, 49 App. D. C. 337, 265 F. 977; Bleakley v. Barclay, 75 Kan. 462, 89 P. 906, 10 L. R. A. (N. S.) 230.

Accordingly, the judgment of the district court of Arapahoe County, Colo., awarding the custody of the minor to petitioner in a proceeding between these same parties, would seem to be conclusive of his right to prevail in this state, unless such a change in conditions affecting the minor's welfare were shown as to dictate otherwise, or unless the effect of the decree of adoption rendered in this state nullifies the decree in Colorado between the same parties involving the same subject-matter. But it is not every change in conditions which will defeat the conclusive effect of the former adjudication. The change must be of a substantial character and calculated to affect materially the minor's welfare. 2 Freeman on Judgments (5th Ed.) § 830; Heavrin v. Spicer, supra; In re Marshall, supra; In re Leete, supra.

The California District Court of Appeals, in the case of In re Marshall, 100 Cal. App. 284, 279 P. 834, 835, said:

"As there is nothing in the record here, nor in the record of the proceeding before the superior court of San Mateo county

presented to this court, showing any change in the moral fitness or condition of petitioner Frank Marshall since the order was made by the Arizona court, nor any charge made that since the entry of such order he has become an unfit or unsafe person to have the care of the minor, the case cited disposes of the question presented."

And the Missouri Court of Appeals in In re Leete, 205 Mo. App. 225, 223 S. W. 962, 967, touching upon the subject of changed conditions since the entry of the decree of a sister state, said:

"We are not, of course, precluded from making an award of custody inconsistent with a foreign decree, based upon matters arising subsequent thereto, if the best interests and welfare of the children, which is the paramount consideration, should warrant such course. Touching this matter, however, the evidence does not show that anything has occurred since the modification of the decree of the superior court of the commonwealth of Massachusetts, of date December 12, 1919, whereby it has been made to appear that the petitioner had in any wise become an unfit or improper person to have the custody of his children; nor, indeed, do any facts appear since said modification of date December 12, 1919, making it appear that it would no longer be to the best interests of the children that they be placed in the custody of their father for the alternate periods as provided by the original and the modified decree."

██ ██ In the present case, eliminating for the moment the fact and effect of the adoption decree in New Mexico, the respondent neither alleged nor proved, nor did the court find, any substantial change in the conditions affecting the minor's welfare arising since the former adjudication. It was not shown or claimed that since then the petitioner had become an unfit or improper person to have the custody of his ward. Indeed, an inspection of the record is convincing as to his fitness and also upon the question of the wholesomeness of home surroundings, if the child is to be returned to his custody. It is urged by counsel for respondent, however, that at the time of the hearing in Colorado the home maintained by her for the child was in a tourist camp which she and her husband maintained; that at the time of the habeas corpus hearing in New Mexico a change for the better· in home surroundings was shown, in that the child was domiciled in a modern and well-maintained apartment in Gallup occupied by her and the child. We do not regard this as such a change in conditions as to warrant another court

in making a new award of the child's custody, in the absence of any showing of adverse change in petitioner's fitness for her custody or in the home conditions and surroundings under which he proposes to maintain her. Furthermore, respondent testified that the arrangement at Gallup was only temporary; that she planned to remove to another town as soon as the current school year ended.

It is obvious that under controlling principles the judgment of the district court should have been in favor of petitioner, unless the adoption decree theretofore rendered by such court in a proceeding to which petitioner was not a party made proper the contrary holding by the court. It is to be remembered that the New Mexico adoption was not the first attempted by petitioner. Procuring the minor's presence in Colorado for a three weeks' visit under a written promise that adoption would not be sought, respondent with significant dispatch procured both guardianship and adoption of the minor. The district court of Arapahoe County, Colo., held both the guardianship and the adoption proceedings void upon the ground that, the minor's domicile being in Missouri, its status could not be permanently changed by the courts of another state in which the minor happened at the time to be sojourning. There is authority for this view. 31 C. J. 988; Motichka v. Rollands, 144 Wash. 565, 258 P. 333; Taylor v. Jeter, 33 Ga. 195, 81 Am. Dec. 202; Lanning v. Gregory, 100 Tex. 310, 99 S. W. 542, 10 L. R. A. (N. S.) 690, 123 Am. St. Rep. 809; In re Shand, 62 Ont. L. R. 145, 2 Dom. L. R. 981; People v. Dewey, 23 Misc. Rep. 267, 50 N. Y. S. 1013; In the Matter of Hubbard, 82 N. Y. 90. But we find it unnecessary to determine whether the adoption proceedings in New Mexico are utterly void as did the Colorado court with respect to the Colorado adoption.

It is, of course, abhorrent to recognized standards of justice that a party should be condemned without hearing or his cause adjudicated in his absence and without notice. It is for this reason that the doctrine of res adjudicata applies ordinarily only to parties and their privies. Such is the rule governing judgments inter partes, and it was

denied application in the case of an adoption against a mother whose children had been adopted without notice to her on an allegation that she had abandoned them. Beatty v. Davenport, 45 Wash. 555, 88 P. 1109, 122 Am. St. Rep. 937, 13 Ann. Cas. 585, and note. On the other hand, there is another class of judgments and decrees designated judgments in rem, which create and adjudicate status, such as decrees of divorce, naturalization, adoption, and legitimacy, which, when rendered by a court of competent jurisdiction, are binding, not on the parties alone and their privies, but upon the whole world. 3 Freeman on Judgments (5th Ed.) § 1524; State v. McDonald, 108 Wis. 8, 84 N. W. 171, 81 Am. St. Rep. 878.

The effect of a judgment in rem in this class of cases is to make it res adjudicata on one not a party thereto only as to the ultimate status adjudicated, and not as to the facts upon which such status was created, except for the purposes of the proceeding. As stated by the text, 3 Freeman on Judgments, § 1524, p. 3131:

"But while a proceeding in rem may in certain aspects, as between the parties who actually appear and participate therein, be a proceeding inter partes and the judgment as conclusive between them as one in personam, a judgment in rem, as such, is conclusive only as to the ultimate matter, condition, relation or status adjudicated, and not as to the evidence or means whereby this ultimate matter is determined, except for the purpose of the proceeding itself. Even those facts upon which the judgment is necessarily predicated and which must therefore be expressly or impliedly adjudicated are not res judicata as to persons not actually participating or contesting the proceedings, though interested therein, when the same issues arise with respect to a different subject matter."

The limitation on the conclusive effect of a judgment in rem as to one not a party thereto is aptly and forcibly expressed by Mr. Justice Holmes in Brigham v. Fayerweather, 140 Mass. 411, 5 N. E. 265, 266, where he said:

"On the contrary, those judgments, such as sentences of prize courts, to which the greatest effect has been given in collateral proceedings, are said to be conclusive evidence of the facts upon which they proceed only against parties who were entitled to be heard before they were rendered. The Mary, 9 Cranch [U. S.] 126, 146 [3 L. Ed. 678, and other cases]. We may lay on one side, then, any argument based on the misleading expression that all the world are parties to a proceeding in rem. This does not mean that all the world are entitled to be heard; and, as strangers

in interest are not entitled to be heard, there is no reason why they should be bound by the findings of fact, although bound to admit the title or status which the judgment establishes."

Other cases illustrating the principle are Gasquet v. Fenner, 247 U. S. 16, 38 S. Ct. 416, 62 L. Ed. 956; Manson v. Williams, 213 U. S. 453, 29 S. Ct. 519, 53 L. Ed. 869; Tilt v. Kelsey, 207 U. S. 43, 28 S. Ct. 1, 52 L. Ed. 95; Farrell v. City of St. Paul, 62 Minn. 271, 64 N. W. 809, 29 L. R. A. 778, 54 Am. St. Rep. 641; Hilton v. Snyder, 37 Utah 384, 108 P. 698, Ann. Cas. 1912C. 241; Shores v. Hooper, 153 Mass. 228, 26 N. E. 846, 11 L. R. A. 308.

Even if it should be conceded that the decree of adoption estops petitioner from disputing the child's status as an adopted child of respondent, a question we do not decide, it does not estop him from disputing the facts upon which that status was created. The power of the courts, in a proper case, to deprive natural parents of their child's custody in the interest of its welfare, is unquestioned. The rights of an adoptive parent certainly can be no greater than those of the natural parent, and the right of neither to the custody of a child, natural or adoptive, is absolute. When, therefore, the respondent sets up and relies upon the decree of adoption as giving her the better right to the child, she finds the petitioner bound, if at all, by the naked adjudication of status fixed by said decree and not by the facts upon which it is based, amongst which are those facts determinative of the right to the minor's custody. This is so because he was not a party to such proceedings. And she in turn is confronted by a decree of the Colorado court determining the very question of custody under which she is concluded both as to the result and the facts. This is so because she was a party to those proceedings. The adoption decree, therefore, does not relieve respondent from the effect of the Colorado decree as res adjudicata on the question of the child's custody.

Counsel for respondent urges that in all disputes over the custody of a child the paramount consideration always is the welfare of the child, and that, even though the matter previously has been adjudicated, when brought before

another court, the judge thereof may on the same facts decide differently. There is some authority to support this contention. Calkins v. Calkins, 217 Ala. 378, 115 So. 866; Commonwealth v. Daven, 298 Pa. 416, 148 A. 524; Bellmore v. McLeod, 189 Wis. 431, 207 N. W. 699; Johnson v. Smith (Ind. Sup.) 176 N. E. 705. We concede that the child's welfare is the controlling consideration, and should be always so. Pra v. Gherardini, 34 N. M. 587, 286 P. 828. But the cases holding that another court on the same facts may make a different award of a child's custody from that previously made in another hearing between the same parties on the same subject-matter overlook the decisive consideration that what is best for the child's welfare already has been adjudicated in the prior proceeding. So, in giving effect to a prior adjudication, the court does not depart from the doctrine contended for. It merely recognizes that the question already has been settled and determined.

Any other rule would be disastrous in the extreme, would reward contempt, and place a premium on abduction. The courts of any one of forty-eight different states would, in the mind of a designing claimant to a child's custody, offer hope that there could an adverse decision elsewhere be circumvented and a tortious custody of the minor made lawful. Fortunately the jurisprudence of our country has not so moulded the law.

"Such unhappy controversies as these may endure until the entire impoverishment or the death of the parties, renders their further continuance impracticable. If a final adjudication upon a habeas corpus is not to be deemed res adjudicata, the consequences will be lamentable. This favored writ will become an engine of oppression, instead of the writ of liberty."

Mercein v. People, 25 Wend. (N. Y.) 64, 99-100, 35 Am. Dec. 653.

"In such cases both principle and considerations of public policy require the application of the doctrine of estoppel to judicial proceedings. It never has been and never can be the law that in such a case both the child and its custodians can be dragged from court to court and subjected to a ceaseless round of discomfort and litigation at the whim of the petitioner."

Knapp v. Tolan, 26 N. D. 23, 142 N. W. 915, 916, 49 L. R. A. (N. S.) 83.

In concluding as we do that the child, Alice L. Evens, should have been remanded into petitioner's custody, we do not wish to be understood as intimating that the child has not been or would not be well cared for by respondent. Quite the contrary appears from the record. It is unquestionably true that she entertains a deep affection for her niece. Condemnation of her act in fleeing from Colorado with the child after an adverse decision by the courts there is softened by the belief that love for her induced the act. But a court to which she submitted her claims to the child's custody having decided adversely thereto, and no change in conditions being shown save such as has been wrought by respondent herself in an effort to evade the former decree, we are not prepared to say, nor is it our province to say, that the court of first resort did not promote the child's welfare in decreeing her into the custody of her paternal uncle, the Missouri guardian, under whose guardianship she may be brought up in the companionship of her brother, the nearest living relative.

The judgment of the lower court will therefore be reversed, and the cause remanded, with direction to enter judgment remanding the minor into the custody of petitioner, with recovery of costs by him in the lower court and in this court.

It is so ordered.

WATSON and PARKER, JJ., concur.

BICKLEY, C. J., and HUDSPETH, J., did not participate.