THE HANEY & CAMPBELL MANUFACTURING COMPANY, Appellant, v. THE ADAZA CO-OPERATIVE CREAMERY COMPANY.

**Contracts of Partnership:** RELEASE: *Estoppel.* A co-partnership which has taken possession of a creamery plant by its proper officers and is using the same, cannot relieve itself from its obligation to pay the contract price, nor relieve its assets from the lien, because some of the signers of the contract who did not sign collusively and who have taken no part in the management of the business and have never become partners have been released from their liability by the assignee of the contract.

RELEASE: *Forgery.* Where subscribers to a contract to build a plant form an association, and accept the plant and operate it, the association cannot defend against an action on the contract for the price, because of forgery of some of the subscriptions, this being neither an action to rescind or against the original signers.

RELEASE OF OBLIGATIONS. A release by a contractor of one of the parties to the contract from liability thereunder, intended merely as a settlement of the liability, and a promise not to sue him, is not a technical release which would release the co-obligors.

**Liens:** ASSIGNMENT OF CONTRACT. An assignee of a contract for the erection of a creamery who furnished the material and performed the labor is entitled to a lien for the amount due either as a contractor or as a sub-contractor, where nothing was paid to the original contractor who has waived all claim under the contract, and no part of the work was done by him under the contract.

**Appeal:** ABSTRACTS: *Transcripts.* Denials and counter denials have a new effect under the new rules. All specific denials are now settled by a transcript which is ordered on application of the appellant.

*Appeal from Greene District Court.*—HON. S. M. ELWOOD, Judge.

THURSDAY, MAY 11, 1899.

SUIT in equity to establish and foreclose a mechanic's lien. The defendant interposed a number of defenses, which will be referred to in the opinion. The trial court dismissed the petition, and plaintiff appeals.—*Reversed.*

*Owen Lovejoy* for appellant.

*Rose & Henderson* for appellee.

DEEMER, J.—In March of the year 1894, one C. H. Freeman entered into a contract with Albert Head and others, whereby he undertook to build, according to certain plans and specifications, a creamery plant at or near the town of Adaza, Iowa, for the agreed price of five thousand two hundred and fifty dollars, payable in cash when the plant was completed. The obligation on the part of Head and others was as follows: "We, the subscribers hereto, party of the second part, hereby agree and covenant to pay the above amount of $5,250 to said first party, in cash, for said creamery or butter factory when completed. It is hereby agreed and understood that said building shall be completed within the time stated above in this contract after the amount of $5,250 is subscribed. Any portion of the amount subscribed herein, and not paid according to the contract shall bear interest at the legal rate. As soon as the above amount, $5,250, is subscribed, or within ten days after, we, the subscribers, hereby agree and covenant to incorporate under the laws of the state as herein provided, and we hereby agree to fix the capital stock at not less than the amount of $5,250, to be divided in shares of $100 each. Stockholders of said association to be held liable only for the amount of shares subscribed by them. The parties of the second part agree among themselves to appoint an executive committee to designate such land to the first party, and to confer with the first party from time to time

during the erection of said factory, and to accept and receive the same, when completed, in substantial accordance with these specifications. It is hereby expressly understood and agreed that this contract is completed when the amount of $5,250 is subscribed  *  *  *  for the faithful performance of our respective parts of the above contract, each binds himself, his heirs, executors, administrators, and assigns." The contract was signed by "Freeman, per C. E. Lee, Agent, Party of the First Part," and concludes in this manner: "We, the undersigned, subscribers to the foregoing articles of agreement, as party of the second part, hereby subscribe for the number of shares of stock set opposite our respective names for a creamery or butter factory to be built at or near Adaza, Greene county, Iowa, according to the foregoing plans and specifications on contract, plans form 6, C. H. F., which is made a part of the foregoing contract; and the said party of the second part agrees to pay for said factory as specified in said contract of plans form 6, C. H. F., which is made a part of said contract, or as may hereafter be specified in writing, and agreed to by the party of the first part.

| The Second Party........ | No. of Shares | Amount of Stock after Incorporation. |
|---|---|---|
| Albert Head............. | 3 | $300 00 |

This is followed by more than fifty other signatures, designating the number of shares for which each subscribed and the amount of stock after incorporation. The total amount subscribed was five thousand seven hundred and seventy-five dollars. Shortly after the making of the contract, and before any work was done thereunder, Freeman assigned the contract to plaintiff, and plaintiff proceeded to erect the factory at a place designated by the subscribers to the agreement. An executive committee representing the subscribers to the instrument accepted the plant when com-

pleted, and plaintiff has collected from those who signed the instrument four thousand nine hundred and ten dollars and seventy-three cents, leaving a balance due and unpaid in the sum of three hundred and thirty-nine dollars and twenty-seven cents. This suit is to collect that balance, and to establish and foreclose a mechanic's lien against the property. The subscribers did not incorporate as agreed, but they took possession of the property and proceeded to operate the same under the name of the Adaza Co-operative Creamery Company; and the action is against this association or co-partnership. The defenses pleaded are, *first,* that the signatures of some of the subscribers are forgeries; and that Freeman falsely and fraudulently represented to those who signed, after the forged signatures were placed upon the paper, that they were genuine. They further plead that Freeman was the principal contractor, and that plaintiff is not entitled to a lien as a subcontractor, because it did not comply with the statutes authorizing and preserving such lien, and that the assignment of the contract did not carry Freeman's right to a lien, if he ever had any such right. They also claim that some of the subscriptions were taken with the secret, fraudulent, and corrupt understanding that the makers would not be bound for the full amount thereof, and with intent to induce others to sign; that these subscribers paid but a small part of the amount subscribed by them, and that plaintiff is now endeavoring to collect the full amount from others who signed, relying upon the fact that all were bona fide subscribers; that plaintiff accepted from some of the subscribers but part of the amount subscribed by them, and released them from all further liability on account of their subscriptions, and thereby released all others from liability. Plaintiff pleaded in reply an estoppel, based on the conduct of the subscribers in accepting the plant after its completion. The record discloses the following facts, in addition to those heretofore stated: Plaintiff furnished all the labor, material, and machinery necessary for the com-

pletion of the plant, and turned it over to the subscribers in accordance with the terms of the contract. Jesse Johnson, the ninth name among the list of subscribers to the contract, is a forgery, and was placed thereon by Freeman without authority. John Cavanaugh, whose name appears among the last, did not sign the paper. Another subscription, purporting to be made by A. C. Griffith, was really the subscription of Freeman himself. Griffith was a buttermaker who attended to the plant until it was turned over to the subscribers, and he never paid anything on his subscription. Albert Head and his two sons, R. C. and M. M. Head, appear to have signed the paper, and have marked opposite their names the aggregate sum of five hundred dollars. These subscriptions were settled by plaintiff for the sum of two hundred and fifty dollars, and the Heads were released from all liability thereon. This was done because Head claimed and represented that his sons had not, in fact, signed the paper, and that their signatures were unauthorized. Plaintiff gave Head a receipt in full at this settlement for the five hundred dollars, and released the Heads, father and sons, from all further liability on the contract. When the building was accepted, the following paper was drawn up and signed by plaintiff's agent: "Whereas Albert Head, P. B. Olmstead, M. M. Reading, and others have, by previous written and oral agreement with one C. H. Freeman, contracted, obligated, and agreed to pay to the said C. H. Freeman the sum of $5,250, the said C. H. Freeman contracting, obligating, and agreeing on his part, for and in consideration of the payment of the said $5,250 as agreed upon, to build, erect, and construct a certain creamery building at Adaza, Iowa, as shown by aforesaid contract, obligation, and agreement; and whereas, the said C. H. Freeman, on the 31st day of March, A. D. 1894, assigned the aforesaid contract, obligation, and agreement to the Haney & Campbell Manufacturing Company, of Belleview and Dubuque, Iowa; and whereas, there are certain claims, liens, and debts due upon and against said creamery, and which have been con-

tracted by the said C. H. Freeman and his agents in and about the construction and erection of said creamery for lumber and materials, iron, tin, brick, stone, boarding, labor, hauling, machinery, and fixtures, painting, and paint; Now, therefore, for and in consideration of the settlement by the said Albert Head, P. B. Olmstead, M. M. Reading, and the aforesaid others of aforesaid agreement with the said Haney & Campbell Manufactr·· ·ag Company, of Belleview and Dubuque, Iowa, assignee of said obligations, the said Haney & Campbell Manufacturing Company agrees and binds itself to and with the obligators in the agreement herein referred to, to pay off and satisfy all of the claims, debts, liens, and obligations against said creamery, or which have been contracted by the said C. H. Freeman or his agents in the building and erection of said creamery, and in event of suit upon this agreement the place of payment shall be at Adaza, Iowa. Haney & Campbell Manufacturing Company, per F. J. Crawford, Secretary."

With these facts settled, what are the rights of the parties? Plaintiff, as assignee of the Freeman contract, furnished the material and performed the labor for the plant, and it is entitled to a lien for the amount due either as a contractor or as a sub-contractor, unless it be for some of the defenses pleaded in the answer. As a sub-contractor it is entitled to a lien, for the reason that defendants do not claim to have paid anything to Freeman, and Freeman has waived all claim under the contract. No part of the work was done by Freeman under the contract. True, he did labor upon the building. but whatever he did was for and on behalf of plaintiff. So that there is no question about the validity of an assignment of a right to a lien. The defenses relied upon have already been stated, and it may be conceded that, if this were an action against the original subscribers to the contract, the fact that some of the signatures were forged would be a defense to the others. The suit is against the association, or co-partnership, however, and

that association or co-partnership has accepted the plant, and is now operating the same.  It is in no position to take advantage of the forgery of names appearing upon the contract.  Had it rescinded the sale because of fraud, or had it brought action to cancel the contract and made the necessary tender, a different question might arise.  We do not in this connection determine the rights of the subscribers as among themselves. It may be that some of them are not bound because of the forgeries committed by Freeman; but the association itself, which has accepted the benefits of the contract, cannot relieve itself from its burdens.  *Barr v. Railroad Co.*, 125 N. Y. 263 (26 N. E. Rep. 145). This same thought applies to the claim of release because of the settlement with the Heads. Defendant adduced evidence, without objection, to show that the contract was several, and not joint.  If this be true,—and we are inclined to think it is, independent of any evidence aside from the contract itself (see *Davis v. Belford*, 70 Mich. 120 (37 N. W. Rep. 919),—then the release of one did not release all.  But, if it be conceded that it was joint and several, yet it does not follow that the defendant association or co-partnership is released from all liability on the contract.  The release was simply of the Heads from liability under the contract, and the facts introduced in evidence clearly show that it was not intended as a technical release, but merely as a settlement of the liability of the Heads on their subscription, and a promise not to sue them.  *Bonney v. Bonney*, 29 Iowa, 448; *Seymour v. Butler*, 8 Iowa, 304.  Conceding that defendant's claim is correct, and that each of the subscribers is liable only to the extent of his subscription, it is clear that there was no release of the association.  There is no evidence to sustain the claim that the subscription made by the Heads was collusive and fraudulent.  The settlement and compromise with them did not depend upon any claim that they were to pay but one-half the amount subscribed.  The burden is on defendant to establish the alleged fraud, and in this it has failed.  But, if it be con-

ceded that some of the subscribers are released from liability by reason of the receipt given to the Heads, it does not follow that plaintiff's lien is thereby defeated. The defendant, which is made up of the subscribers who have paid, has taken possession of the property by its proper officers, and is using the same. Its assets are subject to all legitimate claims against it, although some of the members of the association or co-partnership have been released. Some persons have undertaken to conduct the business, have accepted the building, and are operating the plant. Surely they cannot be heard to say that plaintiff should not recover from this association because certain of the other subscribers, who have taken no part in the management of the business, and have never become members, are not bound. Having accepted the benefits of the contract, it cannot be heard to say that it is not liable because some of the persons who subscribed for stock have been released from liability. Some question is made regarding the sufficiency of the record to justify a trial *de novo*. An examination of the transcript shows there is no merit in the claim. Denials and counter denials in abstracts do not have the same effect under the new rules as under the old. All specific denials are now settled by a transcript which is ordered on application of the appellant. Resort to this leads to the foregoing conclusions. Plaintiff should have judgment for the sum of three hundred and thirty-nine dollars and twenty-seven cents, with six per cent. interest from May 7, 1894, and a decree establishing and foreclosing its mechanic's lien upon the property, together with the lot upon which it is situated.— REVERSED,