. THE STATE, Appellant, v. CLARK.

**Division Two, November 17, 1903.**

1. **Criminal Law:** CONVEYING REAL ESTATE WITHOUT RECITING PRIOR MORTGAGE: LAND IN KANSAS: LEX LOCI REI SITAE. The validity and effect of transfers of real estate are to be determined by the law of the State in which the land is situated. The Missouri Legislature can not prescribe the forms and essential of a deed to lands in Kansas, which would be binding upon the courts and citizens of that State. And the Missouri statute (sec. 1932, R. S. 1899) making it a felony to convey land without reciting in the deed the existence of a prior mortgage, does not apply to land located in Kansas, but only to property situated in Missouri.

2. ———: ———: INTENT. The mere making of the second conveyance without reciting the existence of a prior one is not of itself a violation of the statute, but the evidence must show, *aliunde*, an intent to defraud.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

AFFIRMED.

*Edward C. Crow*, Attorney-General, and *H. S. Hadley* for the State.

(1)  (a) It is the settled law of this State that the words "release, remise and quitclaim" in a quitclaim deed are sufficient operative words of conveyance.   McAnaw v. Tiffin, 143 Mo. 667; Bray v. Conrad, 101 Mo. 331; Wilson v. Albert, 89 Mo. 537.   (b)  And the same is the law of Kansas by express statutory provision. Sec. 1204, General Statutes 1901.   (2)  Armstrong v. Winfrey, 61 Mo. 354, recognizes that a quitclaim deed is within the meaning of the word "conveyance," as used in section 1932, Revised Statutes 1899.   (3)  State v. Wilson, 66 Mo. App. 540, holds that under section

1932, Revised Statutes 1899, it is not necessary to show that anyone has been defrauded, but it is sufficient to show an intent to defraud.

*Cook & Gossett* for respondent.

(1)   A quitclaim deed or release of a person's interests in lands is clearly not a deed or writing for the conveyance or assurance of any lands, tenements or hereditaments. Gibson v. Choteau, 39 Mo. 566; Harkless v. Barton County, 85 Mo. 619; Phoenix Co. v. Landis, 50 Mo. App. 116; Johnson v. Williams, 37 Kas. 179; Trustees v. Hewitt, 37 Kas. 107; Young v. Clippinger, 14 Kas. 150; Price v. King, 44 Kas. 639; Coe v. Persons Unknown, 43 Me. 432; Harrison v. Boring, 44 Tex. 261; Frink v. Darst, 14 Ill. 308; Bennett v. Wheeler, 23 Ill. (13 Peck) 97; Blanchard v. Brooks, 12 Pick. (Mass.) 47.   (2)   Even if a quitclaim or release did come within the purview of this statute, such an instrument relative to lands in Kansas and not to lands in Missouri does not come within the meaning of the statute.   The Missouri statute is not intended to punish or to prevent a person in Missouri from executing an instrument in this State relative to lands in Kansas, which it may be perfectly proper and legal to execute in Kansas.

GANTT, P. J.—This is an appeal by the State from a judgment of the criminal court of Jackson county quashing an information filed in that court against the defendant for having made, executed and delivered a quitclaim deed to one Frederick E. Lyster without having recited therein the execution and delivery to one H. S. Clark of a prior mortgage on the real estate therein conveyed and situated in the county of Wilson, in the State of Kansas, said prior mortgage being at the date of said quitclaim deed still outstanding and in full force.

The universal doctrine in this country is that the

validity and effect of transfers of real estate are to be determined by the law of the State in which the land is situated. No act of the Legislature of Missouri could prescribe the forms and essentials of a deed to lands in Kansas, which would be binding upon the courts and citizens of that State.

In Depas v. Mayo, 11 Mo. 319, Judge NAPTON, speaking for this court, said: "It is a settled rule of the common law, that in relation to land, the capacity to alienate or to take—the *mode* and *form of alienation,* either testamentary or *inter vivos*—and the rules of inheritance, are regulated by the law of the place where the land is situated. [Story's Conflict of Law, sec. 435, et seq.]"

"In general and prima facie, the government of one country has neither interests nor power to enforce its will within the limit of another country, or outside of its own territorial bounds." [1 Bish. New Crim. Law (8 Ed.), sec. 109.]

If the deed alleged to have been executed by defendant on the first day of March, 1902, at Jackson county in this State had been executed in Kansas, the State in which the lands therein described are situated, it is too plain to admit of discussion or doubt that section 1932, Revised Statutes 1899, would have no application whatever to the transaction, because said section has no extra-territorial, effect or sanction. Our Legislature having no power to regulate the conveyances of lands in Kansas, can this statute properly be held to have been intended to control the form and mode of alienation in that State?

While the language is general, it is a fair and necessary implication that the Legislature intended that it should apply to deeds affecting titles to lands and personalty in Missouri only. While it was competent for the defendant to execute the alleged conveyances in this State to lands in Kansas if the forms required by that State were observed, it is perfectly apparent that they

could only operate on the lands in that State. It is not charged in the information that the making of the second or subsequent deed without reciting the first was a violation of any statute of Kansas and in the absence of such an averment it must be treated as if there is no such statute in that State. What then results? The law of Kansas necessarily controls as to the mode and form of conveyances in said State, and a party in Missouri desiring to convey lands situated in Kansas, executes his conveyance in full compliance with the laws of that State, and yet is to be held criminally liable in Missouri because that conveyance does not comply with the forms also required by the laws of Missouri, if this statute is held to apply in such a case.

This section has been in force for many years in this State, and it has been uniformly ruled that the mere making of the second conveyance without reciting the prior one, would not of itself convict the defendant of a violation of said section, but the evidence must show, *aliunde,* an intent to defraud. [Armstrong v. Winfrey, 61 Mo. 354.]

The *lex loci rei sitae* governing in this case, a conveyancer would naturally and properly ascertain what the law of Kansas was and conform to it without reference to our own laws on the subject.

"It is indispensable to a correct understanding of a statute to inquire first, what is the subject of it, what object is to be accomplished by it." [Sutherland on Stat. Cons., sec. 218.] When so considered it seems to us that the plain purpose and intention of our Legislature in the enactment of this statute was to protect subsequent purchasers and mortgagees of real and personal property in Missouri, and not to make a criminal statute for the protection of purchasers and mortgagees dealing with property in Kansas or other sister States.

Looking to the purpose of the Legislature, it is obvious that it was intended as a domestic regulation for the protection of those dealing in real and personal prop-

erty in Missouri, whereby notice is required to be given a grantor of prior existing conveyances and liens executed by him and outstanding and in force upon property in Missouri, and was never intended to have any extra-territorial effect in Kansas or any other State of the Union.

This court in a very recent opinion in Bank v. Dougherty, 167 Mo. 1, has ruled that our statute in regard to the acquisition and exemption of homesteads refers wholly and exclusively to Missouri homesteads, and has no reference to homesteads in other States. In all criminal statutes it is an implied requisite that the offense shall be committed in this State, without expressly naming the State.

We think that the proper construction of section 1932, Revised Statutes 1899, restricts it to conveyances made to property situated in Missouri, and that it was enacted as a domestic regulation for the transfer and alienation of property in this State for the protection of those dealing with such property, and that it was not the intention of our Legislature to provide forms and modes of alienation of property in our sister States.

So construing the section in question, it necessarily follows that the making of the quitclaim to lands in Kansas without reciting the former deed did not amount to a crime within the purview of said section, and the information was properly quashed. The judgment of the criminal court is affirmed. *Burgess* and *Fox, JJ.,* concur.