BERTIE I. GREEN, Petitioner, v. CLAUD C. MC-
DOWELL, Respondent.

Springfield Court of Appeals, June 22, 1922.

1. **MARRIAGE: Validity Governed by Place Where Contracted.** A marriage, valid where contracted, is valid everywhere.

2. ———: **Marriage in Another State Within Six Months of Decree, Held Valid.** A marriage in Tennessee, within six months of a decree of divorce rendered in Oklahoma, was valid, though marriage could not be had within such time in Oklahoma.

3. **HABEAS CORPUS: Re-marriage Held not to Constitute Breach of Good Morals, so as to Render Mother Unfit for Custody of Child.** Re-marriage of a mother in Tennessee, closely following a divorce in Oklahoma and before the expiration of six months, during which time no valid marriage could have been entered into in Oklahoma, *held* not to constitute such a breach of good morals, or of public policy, as to brand her with unfitness for the care and custody of her four-year-old child.

4. ———: **Evidence of Conduct Prior to Divorce Admissible in Proceeding to Determine Custody of Child.** Though, in a general way, it

is correct to say that, when a divorce decree is rendered and the custody of a minor child is awarded to one or the other of the parents, the matter is *res judicata* as to the proper party to retain the custody of the child at that time, and in a subsequent hearing as to the custody of the child, the court cannot go behind the divorce judgment, but must leave the custody of the child where the judgment placed it, unless conditions have changed, nevertheless, evidence of the conduct of one of the parents prior to the divorce decree is admissible to corroborate or explain evidence of the conduct of the same party since the rendering of the divorce judgment.

HABEAS CORPUS.

*O. T. Hamlin* and *Lon S. Haymes* for petitioner.

*O. H. Scott* and *Herman Pufahl* for respondent.

PER CURIAM—This is an original proceeding by *habeas corpus* to determine the right to the custody of Chauncy I. McDowell, a minor child four years of age.

This court appointed Hon. George W. Goad, a member of the Springfield Bar, commissioner with directions to take the testimony and make a report to the court with his finding of facts and conclusions of law. This he has done. The facts found by him are as follows:
"FINDING OF FACTS."

"I find that sometime prior to 1917 the petitioner and respondent were married and lived together as husband and wife until about January, 1921. That there was born of said marriage one child, Chauncy I. McDowell, who is now about four years old and the subject of their controversy.

"That petitioner and respondent resided at Mustang, in Oklahoma County, Oklahoma, for about two years prior to November 16, 1920, at which time petitioner went to Oklahoma City. That petitioner and respondent never lived together as husband and wife from and after December, 1920, although respondent visited petitioner several times while she resided at Oklahoma City. That while she lived at Mustang, Oklahoma, petitioner held the position of post mistress for about two

years, lived in the same building where she kept the postoffice, and also worked at dress making. That some time in the early part of 1919, respondent secured employment in the oil field at Ardmore, Oklahoma, which was about 100 miles distance from Mustang. That respondent came home about once a month, staying from Saturday to Sunday evening. That prior to the time respondent went to Ardmore, petitioner met Arthur R. Green, that she went riding with him several times in company with respondent, and did some sewing for Green's children, and met him at the postoffice in a business way. After petitioner went to Oklahoma City, and during her stay at that place said Green visited her several times, on one or two of said visits he was accompanied by the respondent.

"Respondent testified the first time he met Green was July 5, 1920. That he came home from the oil fields at Ardmore and found petitioner gone; that she came home that night with Green about "ten or eleven or twelve o'clock," claiming they were delayed on account of tire trouble; that they drove respondent's car.

"As to this incident, petitioner and Green testified that Green drove petitioner to Oklahoma City to a Fourth of July celebration at the request of respondent; that they were started home early enough to arrive before dark, but they were delayed by tire trouble and arrived home about nine o'clock that evening—in any event the affair was not treated at the time by respondent as being serious, as Green stayed at the hotel that night, and the next morning respondent called on him and invited him to breakfast with him and petitioner —and on the same day took Green and petitioner in his car for a trip out in the country.

"Both petitioner and Green denied any improper conduct or relations with each other at any time, or that the subject of marriage was ever discussed betw them prior to the divorce decree.

"While in Oklahoma City petitioner attended school, and with the assistance of her parents, paid the expense thereof.

"In July, 1921, petitioner filed suit in the Oklahoma County, Oklahoma, District Court. Respondent was personally served, read the charges in the petition and employed a lawyer to represent him in said case. I find that petitioner and respondent talked over the divorce matter prior to the decree; that petitioner stated that she wanted to be free and wanted to keep the child stating that she would care for and educate same. That respondent consented for her to have the care and custody of child and promised to help her care for it, stating that he wanted her to have it while it was young if she took care of it properly.

"The foregoing are my findings as to matters which occurred prior to the divorce decree.

"On the twelfth day of October, 1921, the District Court within and for Oklahoma County, State of Oklahoma, rendered the following decree omitting caption:

" 'Now on this the 12th day of October, A. D. 1921, the same being one of the regular juridical days of said Court, came on to be heard the above entitled cause, and the plaintiff appearing in person and by her attorneys, Giddings & Giddings, and defendant appearing by his attorneys Cargill, Looney & Estes, and the Court having heard the evidence, and argument and suggestions of counsel, and being fully advised in the premises, find:

" '(1)  That the parties hereto were married as in plaintiff's petition set forth.

" '(2)  That the plaintiff has been an actual resident of the State of Oklahoma and Oklahoma County for more than one year next preceding the filing of her petition herein.

" '(3)  That one child named Chauncey I. McDowell, aged four years now in the custody of the plaintiff, was born as the fruits of said marriage.

" '(4)  That said defendant has been guilty of gross neglect of duty as in plaintiff's petition set forth; that prior to the hearing of this cause and on the 11th day of October, 1921, the parties hereto entered into a Contract of Separation and Disposition of Property and the

settlement of alimony and property rights between them, and that the plaintiff is entitled to a divorce and the custody, care and control of the said minor child, Chauncey I. McDowell, and that she have and recover from the defendant the sum of $750. alimony, and $25 per month for the use, benefit, maintenance, and education of the said minor child, Chauncey I. McDowell, as agreed upon in said Contract of Separation and Disposition of Property.

" 'It is therefore ordered, adjudged, and decreed by the court that the bonds of matrimony heretofore and now existing between the plaintiff and defendant be annulled, set aside, and held for naught, and both parties be and are hereby released from same, that said Contract of Separation and Disposition of Property, having been introduced in evidence herein and marked plaintiff's Exhibit A., be and the same is hereby ratified and approved by the court in all respects; and that the plaintiff have and recover from the said defendant the sum of $750 permanent alimony and in settlement of all property rights between the parties hereto; $350 cash paid to said plaintiff upon this day shown by the evidence in this case, and the additional sum of $400 permanent alimony to be paid on or before the 1st day of March, 1922, and as evidenced by a certain promissory note in writing made, executed and delivered by the defendant to the plaintiff upon the 11th day of October, 1921, and the additional sum of $25 per month payable on the 1st of each and every month hereafter to the plaintiff for the use, benefit, maintenance, and education of the said minor child, Chauncey I. McDowell, and until the further express order of the court. And that the said plaintiff, until any further express order of the court, be and she is hereby awarded the permanent care, custody, and control of the said minor child, Chauncey I. McDowell, subject, however, to the right of the defendant to be with said child and visit said child at any and all reasonable times. Provided, however, that this divorce do not become absolute and of effect until six months from the date hereof.'

"Sections 4968, 4971, & 4973 of the Revised Laws of Oklahoma, 1910, were introduced in evidence by the respondent. Said sections are as follows:

"4968. CARE OF CHILDREN. When a divorce is granted, the court shall make provisions for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper, either before or after final judgment in the action.

"4971. APPEAL IN TEN DAYS. A party desiring to appeal from a judgment granting a divorce, must within ten days after such judgment is rendered file a written notice in the office of the clerk of the court, duly entitled in such action, stating that it is the intention of such party to appeal from such judgment. If notice be filed as aforesaid, the party filing the same may commence proceedings in error for the reversal or modification of such judgment at any time within four months from the date of the decree appealed from and not thereafter. It shall be unlawful in any event for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if notice be filed and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of thirty days from the day on which final judgment shall be rendered pursuant to such appeal. Any person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marraige shall be absolutely void.

"4972. PUNISHMENT FOR RE-MARRIAGE WITHIN SIX MONTHS. Every person convicted of bigamy as such offense is defined in the foregoing section shall be punished by imprisonment in the penitentiary for a term of not less than one year nor more than three years.

"4975. DECREE TO SHOW DATE. Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not

become absolute and take effect until the expiration of six months from said time, or as provided in case of appeal.

"I find that within two or three days after the granting of said divorce decree, petitioner left the City of Oklahoma and came to the home of her partents who live on a farm near Conway, Missouri, with the intention of making her residence there. I find that somewhere between Oklahoma City and Springfield, Missouri, Arthur R. Green joined the petitioner, probably at Vinita, Oklahoma, and rode in her company the balance of the way to Springfield, Missouri, where petitioner was met by her parents and proceeded on to Conway, Missouri, the said Green taking the next train back to Oklahoma.

"I find that a week or so thereafter the said Green communicated with petitioner and made and appointment with her to meet him at Springfield, Missouri. That on or about the twenty-first of October, 1921, petitioner and the said Green met by appointment at Springfield, Missouri, and proceeded to Memphis, Tennessee, where they were married October 22, 1921. I find that it was the intention of said petitioner and said Green prior to starting to Memphis, Tennessee, to take a trip by boat from Memphis, Tennessee, to other places. That on arriving at Memphis, Tennessee, they found that the boats were not running and they decided to stay there three or four days and return to the home of the petitioner's parents, near Conway, Missouri. After their return to Conway, Missouri, and remaining there three or four days, the said Green went to work at his regular employment.

"I find that petitioner and Green lived at the home of her parents for seven or eight weeks and moved from there to 227 West Madison Street, Springfield, Missouri, and lived there until February 8, 1922. That said Green on account of his employment as ground man for the Western Union Telegraph Company and the St. Louis-San Francisco Railway Company, was away from home most of the time and came home only during week

ends. That about February 8, 1922, petitioner and said Green moved to Afton, Oklahoma, and from there to Fairland, Oklahoma, remaining at each place from six weeks to two months, after which time they moved to Seneca, Missouri, where they now reside.

"I further find that it is the intention of petitioner and said Green to move to Paris, Texas, where they expect to make their permanent place of abode. I find that said Arthur R. Green is a man of good reputation and is earning a salary from the Western Union Telegraph Company and St. Louis-San Francisco Railway Company of $150 per month; that he is an industrious young man and is anxious to assist the petitioner in the care and maintenance and education of the said minor child. I find that the said Arthur R. Green was formerly a citizen of Canada, and that he came to the United States and filed his first naturalization papers about three years ago; that he was formerly married and that he had two children, now of the ages of four and eight years, both girls. That his former wife died several years ago; that the oldest child is living with an aunt of his former wife, and lived with said aunt for a period beginning six months prior to the death of his first wife; and that the younger child is now living with the mother of said Arthur R. Green. That said Green owns a residence at Toronto, Canada, which rents for $30 per month, which is used for the care and support of his said children. That the mother of said Green resides at Toronto, Canada, and is worth from thirty to forty thousand dollars. That the aunt which has the custody of his oldest child lives in Georgetown, Canada, her husband being the superintendent of a paper mill there, at a salary of $250 per month.

"That it is the intention of said Green, when he moves to Paris, Texas, to take the care and custody of his youngest child.

"I find that both petitioner and respondent have good reputations and are of splendid families.

"I find that respondent, about February 5, 1922, returned from Oklahoma to the home of his parents near Buffalo, Missouri. That he has no property of his own, and has entered into an arrangement with his father to take care of the farm on the shares, he receiving one-fourth of the crops. I find that his father's family consists of the father and mother, one brother and the respondent. That respondent's mother is about sixty-two years old and the father sixty-nine years old. I further find that respondent's parents are as reputable people as are in Dallas County and own 260 acres of land worth from $75 to $100 per acre and are willing to take the custody and care of said child. The evidence fails to show the future intentions of the respondent.

"I find that respondent has failed to pay the $400 alimony to petitioner and has failed to pay any part of the allowance of $25 per month for the maintenance and education of said minor child; that he has made no inquiry as to the whereabouts of petitioner and said child since said divorce decree and contributed nothing to their support. I further find that petitioner failed to communicate to respondent since said divorce except on one occasion when she wrote to him in regard to the alimony.

"I find that on or about May 24, 1922, petitioner permitted said child, in the company with petitioner's sister, to visit petitioner's parents on a farm near Conway, Missouri, it being the intention of the petitioner also to visit her said parents within a week or so thereafter. That soon after the arrival of said child at the home of petitioner's parents, respondent learned of the whereabouts of said child and sent word to petitioner's parents that he would call to see said child on the following Saturday. That on Tuesday following, prior to said Saturday, in company with his mother, respondent called at the home of petitioner's parents and forcibly and without consent of said petitioner's parents, took into their custody said child. I further find that soon thereafter, the petitioner sued out a writ of *habeas corpus*

from the County Court of Dallas County, Missouri, which, after a hearing, the said Chauncey I. McDowell, was by an order and decree of said County Court on the fifth day of June, 1922, remanded to respondent.''

A transcript of the testimony taken was returned with the report and we have gone carefully over it and approve the finding of facts as reported by the Commissioner.

His conclusions of law are as follows:

''Petitioner contends that the divorce decree rendered October 12, 1921, by the District Court within and for Oklahoma County, Oklahoma, awarding to her the custody, care and control of the minor child, Chauncey I. McDowell, is *res adjudicata,* as to all matters arising prior to said decree, and that this court is bound thereby, and can base a judgment against her only where such facts, circumstances, and conditions arising since said decree tend to show petitioner's unfitness to have the care and custody of said child.''

This contention was raised by petitioner both by a motion to strike out of respondent's answer all allegations relating to matters prior to said decree, and by making timely objections and exceptions to all evidence offered pertaining to such prior matters.

Your Commissioner reserved his ruling on petitioner's said motion to strike out, and her objections to said evidence, and received such evidence which is returned herewith with the understanding that a recommendation concerning said motion and said evidence be made in this report.

I am of the opinion that petitioner's contention is well founded, and that said motion to strike out that part of respondent's answer setting up matters prior to said Oklahoma decree and her objections to all evidence pertaining to such prior matters should be sustained; said allegations being in my opinion, wholly insufficient as a charge of fraud in the procurement of the decree. In support of this conclusion, I submit the following, which I conceive to be the weight of authority in this and other

jurisdictions. [19 Corpus Juris 366; In re Leete, 205 Mo. App. 225, 223 S. W. 962; Milner v. Gatlin, 139 Ga. 109, 76 S. E. 860; Hammond v. Hammond, 90 Ga. 527, 16 S. E. 265; Peo v. Hickey, 86 Ill. App. 20; Hardin v. Hardin, 168 Md. 352, 81 N. E. 60; Avery v. Avery, 33 Kan. 1, 5 Pac. 418; In re Bort, 25 Kan. 308; State v. Giroux, 19 Mont. 149, 47 Pac. 798; Kenner v. Kenner, 139 Tenn. 211, 201 S. W. 779; Wilson v. Elliot, 96 Tex. 472, 73 S. W. 946; Ex parte Boy (Tex.), 157 S. W. 254; State v. Fergus County, 46 Mont. 425, 128 Pac. 590; Mylus v. Cargill (N. M.), 142 Pac. 918.]

Furthermore, in my opinion the evidence of such matter prior to said decree, if competent, either alone or in connection with all the evidence, fails to prove that petitioner was guilty of such conduct as to render her incompetent or unfit to have the care and custody of her minor child.''

II. Respondent contends that the marriage of petitioner to Arthur R. Green, October 22, 1921, at Memphis, Tennessee, was void, asserting that under the laws of Oklahoma and the decree of divorce by the Oklahoma District Court pursuant thereto, October 12, 1921, was not a final decree and prohibited a valid marriage by petitioner in Tennessee at any time within six months thereafter.

The general rule is, that a marriage valid where contracted is valid everywhere. [Johnson v. Johnson, 30 Mo. 72; Banks v. Galbraith, 149 Mo. l. c. 536, 51 S. W. 105; Henderson v. Henderson, 265 Mo. 718, 178 S. W. 175; 1st Bishop on Marriage & Divorce, secs. 843-856; Hills v. State, 61 Neb. 589, 57 L. R. A. 155.]

Respondent has cited authorities which hold that the general rule is subject to the exception, that foreign marriages, though valid where contracted, will not be recognized as valid if they are: First, polygamous; second, incestuous; or third, in other respects obnoxious to the laws and public policy, and good morals of the country where such marriages are assailed; fourth, that

the marriage is an evasion of the laws of the domicile. [Succession of Cabisso (La.), 44 So. 438; State v. Fenn, 147 Wash. 561, 92 Pac. 417; Lanham v. Lanham (Wis.), 117 N. W. 787; Johnson v. Johnson (Wash.), 106 Pac. 500; Hills v. State, 61 Neb. 589, 57 L. R. A. 155; Jordan v. Telephone Co., 136 Mo. App. 192, 116 S. W. 432.]

Relying on said authorities respondent claims that the facts in this case bring it within both the third and fourth exceptions.

In the case of Succession of Gabisso, 44 So. 438, the marriage in question was between a white man and a woman having one-eighth or more negro blood. Such marriage was held contrary to the express law of Louisiana and against good morals and public policy. Also such marriage was void under the laws of Mississippi where contracted.

In Hill v. State, 66 Neb. 589, 57 L. R. A. 155, the issue was whether or not a certain marriage in England was valid, the court upholding such marriage. The note under this case in 57 L. R. A. 155, l. c. 169, states:

"The weight of authority holds that if the marriage is valid according to the *lex loci* it will be upheld by the courts of the State which enacted the statute and in which the parties are domiciled, notwithstanding that the parties went out of the State to solemnize the second marriage for the express purpose of evading the law of the domicile and of the forum," citing numerous authorities.

State v. Ferin, 47 Wash. 561, 92 Pac. 417, holds "that a marriage by one of the parties to a divorce proceeding within the time prohibited by statute, which statute expressly declares shall be void, whether contracted within or without the State, is not void if contracted in a foreign State by whose laws it is valid after the party has acquired a domicile there; but is invalid if the parties went to the foreign country for the purpose of evading the local law and with the expectation of returning to their former home."

Johnson v. Johnson (Wash.), 106 Pac. 500, holds "a marriage between persons who to avoid the law of their domicile prohibiting marriage between first cousins, go to another country (Canada), where the marriage is valid, have the ceremony performed, immediately to their former domicile to reside, will not be recognized there.

Jordan v. Telephone Co., 136 Mo. App. 192, 116 S. W. 432 held the second marriage void, where one of the parties being formerly married obtained an interlocutory decree of divorce from her former husband in the State of New York, and prior to a final decree in said divorce suit, she married another man in New Jersey.

The case of Lanham v. Lanham (Wis.), 117 N. W. 787, is more nearly in point than any of the cases cited by respondent. The only distinction between that case and the one at bar, is that that case was tried and decided in the same State where the divorce was granted. The Lanham case held:

"A legislative declaration that it shall not be lawful for a divorced person to marry again within a year from the date of the divorce, declares a public policy, which will prevent the recognition by the courts of the State, of a marriage between its citizens who go to another State to avoid the provisions of the statute, and, after the ceremony, return to their former domicile."

My conclusion is that the marriage of petitioner and Arthur R. Green on October 22, 1921, at Memphis, Tennessee, in the light of the facts and circumstances in evidence in this case, was a valid marriage. This view in my opinion is supported by the following authorities: [In re Leete, 205 Mo. App. 225, 223 S. W. 962; 1 Bishop on Marriage & Divorce, sec. 869; Bishop on Marriage & Divorce, sec. 1619; Thorp v. Thorp, 90 N. Y. 602; Commonwealth v. Lane, 113 Mass. 458, 18 Am. R. 509; West Cambridge v. Lexington, 1 Pick. 505, 11 Am. Dec. 231; Van Voois v. Brintwall, 86 N. Y. 18, 40 Am. R. 505; People v. Faber, 92 N. Y. 146, 44 Am. R. 357; Dickson v. Dickson Heirs, 1 Yeager 111, 24 Am. D. 444; Wilson v. Holt, 83 Ala. 528, 3 Am. St. 768; Baughman v. Baughman,

210 M. A.—34

32 Kan. 538, 4 Pac. 1003; Durland v. Durland, 67 Kan. 734, 74 Pac. 274; Cooper v. Bower (Kan.), 96 Pac. 59; Frame v. Thornton, 102 Wis. 654, 79 N. W. 79; Dudley v. Dudley, 151 Ia. 142, 130 N. W. 785; State v. Clark, 178 Mo. 20, 76 S. W. 1007.]

These authorities clearly announce the law that a statute prohibiting remarriage within a certain period after a divorce is granted, has no extraterritorial effect. The only question which raised serious doubt in the mind of your Commissioner was whether, under the Oklahoma Law and the terms of the Oklahoma divorce decree, the petitioner and respondent remained husband and wife for the period of six months after October 12, 1921, the date of said decree. If so, then petitioner's marriage to Green in Tennessee, within the said period, was necessarily void. [Jordan v. Telephone Co., 136 Mo. App. 192, 116 S. W. 432.] However, this doubt disappears in the light of the decisions of the Supreme Court of Kansas and the Supreme Court of Oklahoma. Interpreting the effect of the divorce decree under consideration, the Oklahoma divorce law is indentical with the Kansas law in so far as it pertains to the effect of the decree authorized to be rendered. In the case of Durland v. Durland, 67 Kan. 734, 74 Pac. 274, the court said:

"The prohibition upon marriage within six months, however, was the only limitation upon the judgment, as an utter annihilation of the former martial status. If no Appeal was taken, the ties which had bound the individuals together were absolutely and unqalifiedly broken asunder. The parties were each as fully absolved from every marital right and duty and consequence as they were before marriage, and were fully restored to the freedom they enjoyed before marriage in every respect, except they could not marry for six months." [Citing Baughman v. Baughman, 32 Kan. 538.]

The Durland case was cited and approved in the following cases: Phillip v. Phillip, 69 Kan. 324, 76 Pac. 842; McCormick v. McCormick (Kan.), 107 Pac. 546, 552; Johnson v. United Workman, 91 Kan. 314, 137 Pac. 1190;

and Bank v. Insurance Co. (Kan.), 178 Pac. 1. c. 414. Last case the language of the Durland case above set forth was quoted and approved.

The Kansas Court of Appeals in the early case of Blush v. State, 46 Pac. 185, seemed to have asserted a contrary doctrine, and the Oklahoma Supreme Court in Niece v. Territory, 9 Okla. 535, 60 Pac. 300, on the authority of Blush v. State, also held contra to the later Kansas cases. However, the early case decided by the Supreme Court of Oklahoma, In re Smith, 2 Okla. 153, 37 Pac. 1099, held that where the statute prescribed that a prosecution for adultery must be instituted by the husband or wife of defendant, a prosecution by a former wife who was a party to a divorce decree, within six months prior to said prosecution, was not permitted as she was not the wife of defendant. The court said:

"The section providing for appeals in divorce cases and for making the decree recite that the divorce does not become absolute and take effect until the expiration of six months from the date of the rendition of the judgment, must be considered to apply only to that portion of section 4551 (now section 4971), which relates to appeals and remarrying within six months following the date·upon which the divorce is granted."

I find no later decision of the Supreme Court of Oklahoma on this question. I assume that the case of Blush v. State, by the Kansas Court of Appeals is no longer considered authority, as that court has long since been discontinued; likewise the Oklahoma case of Niece v. Territory, which·was decided on the authority of Blush v. State, is not now authority, in view of later cases by the Kansas Supreme Court to the contrary cited above.

The remarriage of the petitioner under the circumstances in this case, does not, in my opinion, constitute such a breach of good morals or of public policy as to brand her with unfitness for the care and custody of her child. [Dudley v. Dudley, 151 Ia. 142, 130 N. W. 785; State v. Yoder (Minn.), 130 N. W. 10; Jenson v. Jenson (Wis.), 170 N. W. 735.]

The evidence in my opinion fails to show that anything has occurred since said divorce decree whereby it is made to appear that petitioner has become an unfit or improper person to have the care and custody of her child. I am satisfied from all the evidence, including the testimony of petitioner and respondent, and her and his demeanor as witnesses, that the comfort, welfare and happiness of the child would be better conserved under care and in the custody of its mother, the petitioner herein, and therefore recommend that the care and custody of said child, Chauncey I. McDowell, be, by the court, awarded to the petitioner.

We have carefully examined our Commissioner's conclusions of law and adopt them and his finding of facts as the opinion of this court with the following modification. Our Commissioner holds, and in a general way his holding is correct, that when a divorce decree is rendered and the custody of a minor child awarded to one or the other of the parents, that matter is *res adjudicata* as to the proper party to retain the custody of the child at that time and in a subsequent hearing as to the custody of the child the court cannot go behind the divorce judgment but must leave the custody of the child where the divorce judgment placed it unless it be shown that conditions have so changed since the divorce decree as to make it appear that the best interests of the child require that the custody be changed, and that testimony of the conduct of the parents prior to the divorce decree is not admissible in the subsequent hearing, except to show that the divorce decree was obtained by fraud.

Our conclusion is, that if, at the subsequent hearing, evidence of the conduct of one of the parents prior to the divorce decree will corroborate or explain evidence of the conduct of the same party since the rendering of the divorce judgment, then it may be admitted for that purpose. [Wilson v. Elliott (Tex.), 73 S. W. 916.]

The Commissioner took all the testimony offered as to the conduct of the petitioner, and her association with her present husband, Mr. Green, prior to the divorce from

her former husband, the respondent, McDowell, and reserved his ruling to as its competency until the evidence was all in and then excluded it. In view of the fact that petitioner was met by her present husband on the train only two or three days after the decree of divorce was rendered and that she married him in about ten days, we think the evidence as to her friendship for and association with Mr. Green prior to the divorce decree was admissible. The courts hold, generally, in subsequent litigation in relation to the custody of the children that if the custody was adjudged in the divorce proceeding, then in the trial thereafter evidence of the conduct of the parties prior to the former hearing is not admissible, and to that general proposition we agree.

The case of In re Leete, 205 Mo. App. 225, 223 S. W. 962, was very similar to this case except that the testimony of the conduct of the parties prior to the divorce proceeding was not taken and what the character of that testimony would have been, if admitted, does not appear in the reported opinion in the case. The testimony as to prior conduct was excluded on the ground that the divorce decree, which also included an award of the custody of the children, by the court in the State of Massachusetts was *res adjudicata* as to the custody of the children as well as to the divorce. It was there held, in conformity to the general rule, that to authorize a court in this State to make an order as to the custody of the children different from the one made by the court of another State when the divorce was granted there must be proof that conditions had so changed since the divorce decree and award of custody of the children was rendered that the best interests of the children would require a different provision. It was then held that no evidence of that kind had been furnished. The question of admitting testimony to show the prior conduct of the parents for the purpose of corroborating or explaining conduct since the decree of divorce was rendered was not passed on or discussed in that case. We approve and follow that case, but on account of the peculiar condition of the testimony

in this case we have concluded that testimony as to the prior conduct of petitioner was admissible solely for the purpose of shedding light upon her subsequent conduct. Our order in this case must be and is based on conditions as we now find them to be and we hold that evidence of the conduct of the parents prior to the divorce decree is not admissible to establish an independent fact, but is only admissible when it is of such a nature as to corroborate or explain evidence as to the subsequent conduct of the parties. We think such testimony admissible for that purpose but for that only and standing alone cannot be considered at all but can only be considered for the purpose of shedding light upon the subsequent conduct of the parties. If the evidence of prior conduct is not of such a character as to serve that purpose it should be excluded. We agree with the Commissioner that when the evidence of the prior conduct of the petitioner is admitted and considered in connection with all that has occurred since the divorce decree was rendered the testimony as a whole fails to show that the petitioner is now unfit to have the care and custody of the child.

Our conclusion and the judgment of the court is, that the custody of the minor child, Chauncey I. McDowell, be awarded to and remain with its mother, the petitioner, Bertie I. Greene, and that respondent, Claud C. McDowell, the father of said child be permitted to visit said child at all reasonable times and in addition thereto he be permitted to take the child to his home or place of residence to visit him during the month of July of each year except July, 1922. He, at his own expense, to go or send some one for the child and in like manner to return it to its mother at the end of the month.